RICHARD J. ORR, ESQ.
Attorney ID: 66860
GERALD D. WIXTED, ESQ.
Attorney ID: 54545
**DILWORTH PAXSON LLP**
2 RESEARCH WAY
PRINCETON, NEW JERSEY 08540
(609) 924-6000 (MAIN #)/(609) 987-3993 (DIRECT #)
(609) 987-6651 (FACSIMILE)
rorr@dilworthlaw.com
gwixted@dilworthlaw.com

LEE H. OGBURN, ESQ.
EZRA S. GOLLOGLY, ESQ.
**KRAMON & GRAHAM PA**
ONE SOUTH STREET, SUITE 2600
BALTIMORE, MARYLAND 21202
(410) 752-6030 (MAIN #)
(410) 539-1269 (FACSIMILE)
logburn@kg-law.com
egollogly@kg-law.com
*ATTORNEYS FOR PLAINTIFF, HARTFORD FIRE INSURANCE COMPANY*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>HISCOX INC., LLOYD'S SYNDICATE 3624 (HISCOX), and TANGIBL LLC,<br><br>Defendants. | Civil Action No.._____ |

**COMPLAINT**

Plaintiff Hartford Casualty Insurance Company ("Hartford") sues Hiscox Inc. and Lloyd's Syndicate 3624 (Hiscox) (together, "Hiscox") and Tangibl LLC ("Tangibl") and alleges as follows:

## **INTRODUCTION**

1. This action concerns Hartford's obligations under a general liability insurance policy that Hartford issued to Tangibl, an electrical engineering firm, (the "Hartford Policy") and Hiscox's obligations under a general and professional liability insurance policy that Hiscox issued to Tangibl (the "Hiscox Policy").

2. Specifically, Hartford seeks a declaration that it does not owe a duty to defend or indemnify Tangibl under the Hartford Policy in connection with the consolidated proceeding captioned *Kathleen Valenti, Executrix of the Estate of Robert Holmes, et al. v. Waste Management Disposal Services of Pennsylvania, Inc., et al.*, Nos. 2943 & 1887 (First Judicial District of Pennsylvania Court of Common Pleas, Philadelphia County) (the "Underlying Action"). Hartford also seeks a declaration that Hiscox is obligated under the Hiscox Policy to assume Tangibl's defense in connection with the Underlying Action.

3. The basis for the declarations sought by Hartford is that the claims against Tangibl in the Underlying Action have, as a matter of law, become confined to claims that are not covered by the Hartford Policy but are covered under the Hiscox Policy.

4. The Underlying Action seeks damages because of bodily injury caused by an electrical fire that took place on January 17, 2015 at an electrical cabinet that was part of an electrical boiler system in a liquid waste treatment facility in Bristol, Pennsylvania. The plaintiff in the Underlying Action seeks to hold Tangibl legally responsible for the fire because Tangibl was allegedly negligent in designing and installing the electrical system at the treatment facility, placing warning signs on an electrical cabinet, and advising regarding safety procedures associated with the electrical boiler system.

5. Hartford is currently defending Tangibl against the Underlying Action subject to a full reservation of Hartford's rights. The basis for Hartford's reservation is that the Hartford Policy contains professional services exclusions that preclude coverage for liability arising out of professional services performed by Tangibl.

6. The claims against Tangibl in the Underlying Action, which has been pending since December 2016, have become confined to the allegedly negligent provision of professional services by Tangibl—*i.e.*, the design and installation of the electrical system, the placement of warning signs on an electrical cabinet in compliance with applicable codes, and advice regarding safety procedures associated with the electrical system.

7. Because of the professional services exclusions in the Hartford Policy, Hartford has no obligation to defend or indemnify Tangibl. By contrast, Hiscox issued professional liability insurance to Tangibl that provides coverage for those very types of claims. Consequently, Hiscox is obligated to defend Tangibl against the Underlying Action while Hartford is not.

8. Hartford has asked Hiscox to immediately assume Tangibl's defense to avoid the potential of prejudice to Tangibl, but Hiscox has refused. To ensure that Hartford may withdraw its defense without prejudice to Tangibl, Hartford also seeks a declaration that Hiscox is obligated to immediately assume Tangibl's defense.

9. There is a justiciable controversy concerning Hartford's obligations under the Hartford Policy because Hartford believes that it no longer has any obligation to defend or indemnify Tangibl in connection with the Underlying Action and that Hiscox must immediately assume Tangibl's defense, while Hiscox believes that Hartford is obligated to continue defending, and may also be obligated to indemnify, Tangibl in connection with that same action

and that Hiscox has no obligation to assume Tangibl's defense. The purpose of this case is to resolve these disputes.

10. Tangibl tendered defense of the Underlying Action to both Hartford and Hiscox. Consequently, Tangibl possesses an interest relating to the subject matter of this action and is so situated that resolution of this action in its absence may impair that interest.

## PARTIES

11. Hartford is an Indiana Corporation with its principal place of business in Hartford, Connecticut.

12. Tangibl is a Pennsylvania limited liability company with its principal office in Yardley, Pennsylvania. Upon information and belief, none of the members of Tangibl are citizens of Indiana or Connecticut.

13. Hiscox Inc. is a Delaware corporation with its principal place of business in New York, New York.

14. Upon information and belief, Lloyd's Syndicate 3624 (Hiscox) is a foreign corporation organized and existing under the laws of the United Kingdom with its principal place of business in the United Kingdom.

## JURISDICTION AND VENUE

15. This Court has jurisdiction under 28 U.S.C. § 1332 because no plaintiff is a citizen of the same state as any defendant, a citizen of a foreign state is an additional party, and the amount in controversy exceeds $75,000.

16. This Court has jurisdiction over this declaratory judgment action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*

4

17.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

### The Hartford Policy

18.     The Hartford Policy is numbered 39 SBA RI1571 and has a policy period of February 9, 2014 to February 9, 2015.

19.     The Hartford Policy includes a Business Liability coverage part and an Umbrella Liability coverage part.

20.     The insuring agreement in the Business Liability coverage part includes the following language:

> **A.    COVERAGES**
>
> **1.    BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**
>
> **Insuring Agreement**
>
> a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.
>
> * * *

21.     The Business Liability coverage part contains the following exclusionary provisions:

5

B. **EXCLUSIONS**

1. **APPLICABLE TO BUSINESS LIABILITY COVERAGE**

   This insurance does not apply to:

   * * *

   j. **Professional Services**

   "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional service. This includes but is not limited to:

   * * *

   (3) Supervisory, inspection, architectural or engineering activities;

   * * *

22. The Hartford Policy includes an endorsement titled "Exclusion - Engineers, Architects or Surveyors Professional Liability" that modifies the insurance provided under the Business Liability coverage part as follows:

   This endorsement modifies insurance provided under the following:

   **BUSINESS LIABILITY COVERAGE FORM**

   The following is added to Paragraph **1., Applicable to Business Liability Coverage** (SECTION **B.** – EXCLUSIONS):

   1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by:

      a. Any insured; or

      b. Any engineering, architectural or surveying firm that is performing work on your behalf in such capacity.

   2. Professional services include:

6

  **a.** The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; and

  **b.** Supervisory, inspection, architectural or engineering activities.

23. The insuring agreement of the Umbrella Liability coverage part includes the following language:

> **SECTION I - COVERAGES**
>
> **INSURING AGREEMENTS**
>
> **A.** **Umbrella Liability Insurance**
>
>   1. We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies caused by an "occurrence".
>
>      \* \* \*

24. The Hartford Policy includes an endorsement titled "Exclusion—Engineers, Architects or Surveyors Professional Liability" that modifies the insurance provided under the Umbrella Liability coverage part as follows:

> This endorsement modifies insurance provided under the following:
>
> **UMBRELLA LIABILITY PROVISIONS**
>
>   **1.** The following exclusion is added to **B., Exclusions** (SECTION **I.** – COVERAGES):
>
>   This policy does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by:
>
>     **a.** Any "insured"; or

7

        **b.**      Any engineering, architectural or surveying firm that is performing work on your behalf in such capacity.

   **2.**      Professional services include:

        **a.**      The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; and

        **b.**      Supervisory, inspection, architectural or engineering activities.

### The Hiscox Policy

25. The Hiscox Policy is numbered ANE1216569.14 and has a policy period of June 16, 2014 to June 16, 2015.

26. The Hiscox Policy Declarations identify the retroactive date as May 4, 1994.

27. The Hiscox Policy includes a Professional Liability coverage part and a General Liability coverage part.

28. The insuring agreement in the Professional Liability coverage part includes the following language:

> **We** will pay up to the **coverage part limit** for **damages** and **claim expenses** in excess of the **retention** for any covered **claim** against **you** alleging a negligent act, error, or omission in **your construction services** performed on or after the **retroactive date**, including but not limited to:
>
> 1. **property damage**;
> 2. **bodily injury**;
> 3. **contractors pollution liability**;
> 4. **third party discrimination**; or
> 5. **personal and advertising injury**,
>
> provided the **claim** is first made against you during the **policy period** and is reported to us in accordance with Section V. Your obligations.

29. The Professional Liability coverage part defines "[c]onstruction services" as "only those services identified as Covered Professional Services in the Declarations."

8

30. The Hiscox Policy Declarations identify the "Covered Professional Services" as "[s]olely in the performance of services as a licensed engineer and construction manager for others for a fee."

31. The insuring agreement in the General Liability coverage part of the Hiscox Policy includes the following language:

> **We** will pay up to the **coverage part limit** for **damages you** become legally obligated to pay because of **bodily injury** or **property damage** to which this Coverage Part applies, provided:
>
> 1. the **bodily injury** or **property damage** occurs during the **policy period**;
>
> 2. the **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and
>
> 3. **you** have paid the applicable **retention** stated in the Declarations.
>
> **We** will have the right and duty to defend any **claim** seeking such **damages**, as set out in Section II. Defense and supplementary payments. **We** may, at **our** discretion, investigate any **occurrence** and settle any **claim** that may result.

32. The General Liability coverage part contains the following exclusionary provisions:

> **We** will have no obligation to pay any sums under this Coverage Part for **medical expenses**, or for any **claim**, including any **damages** or **claim expenses**, for **bodily injury**, **property damage**, or **personal and advertising injury**:
>
> * * *
>
> 12. based upon or arising out of **your** actual or alleged performance of or failure to perform **professional services**.

33. The General Liability coverage part defines "professional services" as "professional services customarily provided by an . . . engineer. . . or any other services identified as Covered Professional Services in the Declarations."

9

## The Underlying Action

34.     In December 2016, Robert Holmes commenced the Underlying Action. His complaint named Tangibl and other defendants. A copy of Mr. Holmes' complaint is attached as **Exhibit A**.

35.     The Underlying Action was later consolidated with an earlier suit that Mr. Holmes filed against parties not named as defendants in Mr. Holmes' December 2016 complaint.

36.     In February 2018, Mr. Holmes died. Mr. Holmes was replaced as the plaintiff in the Underlying Action by his common law wife, Kathleen Valenti, who is also the executrix and personal representative of Mr. Holmes' estate.

37.     In May 2018, Ms. Valenti filed an amended complaint against Tangibl and other defendants. A copy of Mr. Valenti's amended complaint is attached as **Exhibit B**.

38.     The amended complaint alleges that:

a.     On January 17, 2015, Mr. Holmes was asked to perform maintenance on a boiler system that was allegedly malfunctioning at a Waste Management liquid waste treatment facility located in Bristol, Pennsylvania. Ex. B, ¶ 12.

b.     Tangibl "designed, maintained, owned, supervised, operated, constructed, advised, approved, implemented, installed and/or controlled aspects of the Waste Management facility including the boiler, accompanying Electrical Panel, and larger electrical design and as such, owed a common law duty to ensure site safety to those persons lawfully performing work within that facility, specifically on systems . . . Tangibl . . . designed, maintained, owned, supervised, operated, constructed, implemented, installed, and/or controlled to others, including Holmes." *Id.*, ¶ 18.

10

   c. At all relevant times, Tangibl "designed, maintained, owned, supervised, operated, constructed, advised, approved, implemented, installed, and/or controlled" the "electrical power system," "the lock out tag out procedures," the electrical wiring in the Electrical Panel," and "the fuses and fuse blocks" in the facility. *Id.*, ¶¶ 19-22.

   d. While Mr. Holmes was working on the boiler system, "an electrical explosion occurred" and Mr. Holmes was "set on fire, and remained on fire for more than one minute. . . ." *Id.*, ¶¶ 26-27.

   e. As result of the injuries sustained in the fire, Mr. Holmes spent five weeks in the intensive care unit, underwent multiple skin grafts, multiple surgeries, an above-the-knee amputation, and eventually died. *Id.*, ¶¶ 28-30.

   f. The January 17, 2015 electrical explosion "would not have happened but for Tangibl's . . . negligent and careless selection or design of the Boiler System that, *inter alia*, required too much electrical capacity, and was not otherwise fit for its intended purpose." *Id.*, ¶ 58.

39. Based on such allegations, the amended complaint asserts claims of negligence and strict products liability against Tangibl. *Id.* at ¶¶ 57-64, 75-85, 129-136, & 147-157.

40. Upon information and belief, the claims against Tangibl in the Underlying Action have been confined through fact and expert discovery to the allegedly negligent provision of professional services by Tangibl.

41. For example, the expert report of Jeffrey M. Kobilka, PE dated May 29, 2018 opines that:

> 6. Tangibl failed to apply safety requirements found in UL 508A and NFPA 79 regarding disconnect switches interlocked with enclosure doors in industrial control panels while directing the electrical

11

       installation making the electrical system defective and unsafe. This was a cause of the incident.

7. Tangibl failed to meet the requirements of the NEC during the electrical installation of the boiler regarding integral disconnecting means making the electrical system defective and unsafe. This was a cause of the incident.

8. Tangibl failed to meet the requirements of NFPA 70E 2012 by labeling the boiler electrical cabinet with the wrong category for personal protective equipment.

A copy of Mr. Kobilka's report is attached as **Exhibit C**.

42. Similarly, the expert report of William J. Vigilante, Jr., PhD, CPE dated June 29, 2018, opines that:

1. . . . Tangibl knew or should have known of the arc flash and/or electric shock hazard associated with accessing the boiler control cabinet without first disconnecting the power.
2. . . . Tangibl failed to address the arc flash and electric shock hazards associated with accessing an energized cabinet through the use of available safeguards.
3. . . . Tangibl's failure to include the available door interlock disconnect was unreasonably dangerous, rendered the subject control cabinet defective, unreasonably dangerous, unsafe for its intended purpose, and was a substantial cause of Robert Holmes' injury.

\* \* \*

8. . . . Tangibl's failure to provide an effective warning system regarding the arc flash and electric shock hazards associated with accessing the energized control cabinet was unreasonably dangerous, and was a substantial cause of Robert Holmes' injury
9. It would have been reasonable for . . . Tangibl to provide an adequate warning system, including a readily visible, complete, and practical on-product warning, regarding the arc flash and electric shock hazard associated with accessing the energized control cabinet. The cost in terms of money, effort, and time to do so would have been minimal and insignificant.
10. Had they provided an adequate warning system, including a readily visible on-product warning, regarding the arc flash and electric shock hazard associated with accessing the energized control cabinet, . . . Tangibl would have ensured that Robert Holmes was provided with the critical safety information he needed to ensure his own safety and avoid injury.

12

A copy of Mr. Vigilante's report is attached as **Exhibit D**.

43. In addition, on August 6, 2018, Tangibl filed in the Underlying Action a motion for partial summary judgment. A copy of Tangibl's motion is attached as **Exhibit E**.

44. In that motion, Tangibl seeks an order dismissing the strict liability claims against Tangibl "because Tangibl is not a seller of a product and the claims at issue in this case are based on the status of Tangibl as a provider of professional services." Ex. E at 2.

45. On September 5, 2018, the plaintiff in the Underlying Action—Ms. Valenti—opposed Tangibl's motion. A copy of Ms. Valenti's opposition is attached as **Exhibit F**.

46. In her opposition, Ms. Valenti does not dispute that the claims against Tangibl arise out of Tangibl's status as a provider of professional services. Instead, Ms. Valenti contends that the services provided by Tangibl expose it to a products liability claim as a matter of Pennsylvania law. *See, e.g.*, Ex. F at 14-15.

47. Tangibl's motion for summary judgment and Ms. Valenti's opposition confirm that the claims against Tangibl in the Underlying Action are confined to claims arising out of alleged professional negligence.

48. Hartford is currently defending Tangibl in connection with the Underlying Action.

### The Disputed Coverage Issues

49. Because of the professional services exclusion in the Hartford Policy, Hartford has no obligation to defend or indemnify Tangibl in connection with the Underlying Action.

50. Because the claims against Tangibl in the Underlying Action fall within the coverage provided by the Professional Liability coverage part of the Hiscox Policy, Hiscox is

obligated to defend and potentially indemnify Tangibl in connection with the Underlying Action under that coverage part of the Hiscox Policy.

51.     Hartford is entitled to immediately withdraw its defense of Tangibl.

52.     Hiscox is obligated to immediately assume Tangibl's defense.

## COUNT I
(Declaratory Judgment—Hartford Has No Duty To Defend Or Indemnify Tangibl)

53.     Hartford repeats and incorporates the foregoing allegations as if set forth fully herein.

54.     The claims against Tangibl in the Underlying Action have become confined to claims that are precluded from coverage by the professional liability exclusion in the Hartford Policy.

55.     Hartford is not obligated under the Hartford Policy to defend or indemnify Tangibl in connection with the Underlying Action.

56.     Hartford is entitled to withdraw its defense of Tangibl.

57.     Whether Hartford is obligated to defend or indemnify Tangibl in connection with the Underlying Action is the subject of dispute between Hartford and Hiscox.

## COUNT II
(Declaratory Judgment—Hiscox Is Obligated To Immediately Assume Tangibl's Defense)

58.     Hartford repeats and incorporates the foregoing allegations as if set forth fully herein.

59.     The claims against Tangibl in the Underlying Action have become confined to claims that are potentially covered under the Professional Liability coverage part of the Hiscox Policy.

60. Hiscox is obligated to immediately assume Tangibl's defense to avoid prejudice to Tangibl.

61. To the extent the Court determines that Hiscox is obligated to assume Tangibl's defense, Hartford seeks a declaration as to Hartford's and Hiscox's properly allocable shares of Tangibl's defense costs.

62. Whether Hiscox is obligated to immediately assume Tangibl's defense in connection with the Underlying Action is the subject of dispute between Hartford and Hiscox, as is Hartford's and Hiscox's properly allocable shares of Tangibl's defense costs.

## COUNT III
(Declaratory Judgment—Contribution)

63. Hartford repeats and incorporates the foregoing allegations as if set forth fully herein.

64. Hartford is entitled to a judgment against Hiscox in the amount of Hiscox's reimbursement obligation to Hartford in connection with costs incurred to defend Tangibl in the Underlying Action, with interest.

WHEREFORE, Hartford requests that this Court enter judgment declaring:

A. That Hartford is not obligated under the Hartford Policy to defend or indemnify Tangibl in connection with the Underlying Action;

B. That Hartford is entitled to withdraw its defense of Tangibl;

C. That Hiscox is obligated under the Hiscox Policy to immediately assume Tangibl's defense;

D. Hartford's and Hiscox's properly allocable shares of Tangibl's defense costs;

E. That Hiscox must reimburse Hartford in accordance with Hiscox's properly allocable share of the costs incurred to defend Tangibl, plus interest; and

15

F.    That Hartford is entitled to such other relief as this Court deems just and proper.

Respectfully submitted,

**DILWORTH PAXSON LLP**
*Attorneys for Plaintiff,*
*Hartford Casualty Insurance Company*

By: /s/ Richard J. Orr
      Richard J. Orr

*Of Counsel:*

**KRAMON & GRAHAM PA**
*Attorneys for Plaintiff,*
*Hartford Casualty Insurance Company*

Dated: December 3, 2018